PERKINS ELECTRIC SWITCH MFG. CO. v. GIBBS ELECTRIC MFG. CO. et al.

(Circuit Court, D. Connecticut.   June 20, 1898.)

1. PATENTS—CONSTRUCTION OF CLAIMS—PROCEEDINGS IN PATENT OFFICE.
    A patentee should not necessarily be estopped by statements of his solicitor in explaining the claims; but where he deliberately acquiesces in the rejection of a broad claim, and substitutes therefor a narrower one, as a condition of securing the patent, he cannot thereafter insist on a construction which will cover what was thus abandoned.

2. SAME—ELECTRIC SWITCHES.
    The Gibbs patent, No. 517,100, for an improvement in electric switches of the form known as "snap switches," covers a new and useful improvement, but must be limited to the precise construction shown.

This was a suit in equity by the Perkins Electric Switch Manufacturing Company against the Gibbs Electric Manufacturing Company and others for alleged infringement of a patent.

C. L. Buckingham, for complainant.
Phillipp, Phelps & Sawyer and J. J. Kennedy, for defendants.

TOWNSEND, District Judge.   Bill in equity on patent No. 517,-100, granted March 27, 1894, to complainant, as assignee of one Gibbs.   Defendants claim that they manufacture under patent No.

557,198, granted to said Gibbs.   The invention relates to that form
of electric switch known as a "snap switch."   Complainant and de-
fendants each use devices which comprise the ordinary insulating
base, with stationary contacts, and the lock latch and trip, of the
prior art.   Each use what will hereafter be called the "two-part
block"; the complainant actuating it by a screw and nut, while the
defendants use a rack and pinion.   The complainant, after the man-
ner of owners of patents for electrical devices, claims that this two-
part block feature is a great invention, "and constitutes such an im-
portant contribution to the art that the patent may be regarded as
of the pioneer class, and, as such, interpreted to cover, not the mere
forms shown, but, as well, the real invention of the claims."   The
claims in suit alleged to cover this feature are the following:

"(1) An electric switch, having a base with stationary contacts; a rigid lock,
independent of any conducting parts; and a rotary handle, with a screw
thread bearing a two-part block (one part having conducting poles, and the
other part normally engaging with the lock on the base, but adapted to be
released therefrom by the rotation of the handle spindle); and a spring, con-
nected between the spindle and a portion of the block, for throwing the block
when the spindle is sufficiently rotated.—substantially as specified.  (2) An
electric switch, having a base with stationary contacts, and a rotary handle
spindle, with a screw thread; a threaded nut borne by the screw; a block,
with conducting poles, loosely connected with the nut; a lock on the base
for temporarily holding the nut and block against rotation; and a spring for
rotating the block when the nut is released from the lock,—substantially as
specified.  (3) An electric switch, having a base with stationary contacts, and
a rotary handle spindle, with a screw thread; a threaded nut borne by the
screw; a block, with conducting poles, held rotarily with, but movable side-
wise independent of, the nut; a circular ratchet on the base beneath the nut;
and a spring, with one end connected with the spindle and the other with the
nut,—substantially as specified."

The "two-part block," so-called, of the patent, consists of "a thread-
ed nut that is preferably provided with wings, the bottom edges of
which, when the nut is screwed down the thread, are adapted to make
contact with the teeth of the ratchet on the base," and "a circular
block of insulating material which holds a pair of conducting poles."
A screw-threaded spindle bears this nut, and when said spindle is
rotated the nut is drawn up said spindle until it is freed from the
teeth of said ratchet, when it springs forward, and carries the block
of insulating material to a point where its poles make or break con-
tact between stationary rigid contacts below, and spring arms above,
said block.   Whether such a mere locking nut forms a part of a
block, and whether complainant's device is a two-part block, as dis-
tinguished from the prior art, is a question of names, and imma-
terial.   The term did not originally appear in the patent at all, and
now is nowhere to be found except in the first claim.   The essential
consideration is the functional result of this construction.   The
block, being "loosely supported, so that it rotates with, but moves
sidewise independently of, the nut," floats, as it were, between the
contacts, and thus secures better contacts, is adapted to use in
switches constructed or assembled by unskilled labor, and thus
cheapens the product.   The complainant's patent covers a practical
construction.   But, stripped of the dazzling halo which convention-
ally adorns appliances designed to deal with that mysterious agent,

electricity, and viewed in the everyday light of the prior art, it is merely a new and useful improvement, effected by the skillful adaptation of well-known means so as to secure greater freedom of movement. Complainant has made more out of its patent than the patentee conceived, by the discovery of the importance of the distinction between one-part and two-part blocks; but nevertheless the patent is a good one, within narrow limits.

Patent No. 435,152, granted August 26, 1890, to Norton, sufficiently shows the status of the patent in suit, with reference to the prior art. It shows the lock, latch, trip, and spring of complainant's patent, and a perforated block of insulating material, and a cam-faced disk, from which two pins extend down so as to pass through said perforations into corresponding holes in the base, and is operated like complainant's switch. It is immaterial whether this is a one-part or a two-part block. It does not provide means for such free floating or sidewise movement as are shown in complainant's patent. Its contacts are rigid, and therefore the range of sidewise movement of the blocks must be limited. But it is cited here in order to show what slight modifications were required to adapt existing appliances to the new requirements of the electric switch art. Neither complainant nor defendants construct their switches in accordance with the specifications of the patents under which they respectively profess to make them. Defendants use a block like that covered by the patent in suit. But their handle has no "screw thread, bearing a two-part block," nor "threaded nut borne by the screw," as claimed in the patent in suit. Their switch is operated by means of a rack and pinion, as described in patent No. 557,198, to defendant Gibbs. The pinion is borne by the spindle, and is located in a recess in the block, and a sliding rack meshes with it. When the handle is turned, the pinion moves the rack outward to work a catch, which moves at right angles to the axis of the spindle until the block is unlocked and rotated by the spring in the ordinary way for making or breaking contact. The complainant claims that the defendant Gibbs, by the substitution of the rack and pinion, merely sought to evade his former patent, and that the one is the equivalent of the other. If this were a broad patent, there would be more force in this contention. But, as defendants have neither screw nor nut, we must examine the file wrapper for further light. I do not think the patentee should necessarily be estopped by statements made by his solicitor in explaining the claims. But here the broad claim was rejected, and the applicant, as a condition of securing his patent, deliberately acquiesced in such rejection; and, as a condition of receiving a patent, abandoned the broad claim, and substituted therefor a narrower one. Upon notice from the patent office of the adverse claims of the public, the inventor is at liberty to stake out his boundaries where he sees fit, but he cannot then fix them by a rolling stone, to be afterwards pushed into the domain occupied by the public. In the first claim, as originally filed, the two-part block construction was neither referred to nor claimed. The claim was rejected on the Norton patent, No. 430,252, and Johnson patent, No. 427,328. The claim was then so amended as to refer to

"the locking part of the block for throwing the block," and was again rejected, in the following language:

"Claim 1 covers no more, broadly, than the mere use of the idea of the independent locks of 435,152 on the switches of 427,328. Such use, broadly, is not patentable. The applicant is limited to his specific construction."

Patent No. 435,152 is the Norton patent, already discussed. The claim was again amended; the attorney for the expert arguing as to said claim as follows:

"It cannot be said to cover merely the use of the Norton lock on a Johnson switch. This claim is limited to a specific construction, and the structure claimed is not found in the references cited against the former first claim."

The claim was again rejected, and claim 1 of the patent in suit substituted therefor; the attorney for the applicant saying, inter alia:

"The reference cited does not have a screw thread bearing a two-part block, one part having conducting poles, and the other part engaging with a lock on the base, which is now an element of the first claim."

Claims 2 and 3, which are limited in terms to a screw-threaded spindle and threaded nut, were allowed as filed, and the objection to the first claim was amended so as to cover a certain specific construction. In these circumstances, complainant's claim should be limited to the precise construction stated by the patentee, and should not be extended to cover the broad construction abandoned by him in the patent office. And inasmuch as the defendants do not use "a screw thread bearing a two-part block," and operating horizontally, but a rack and pinion moving at right angles to the axis of the spindle, they do not infringe said first, second, and third claims. The fourth claim is a narrow claim in terms. It was narrowed by the action of the applicant in the patent office to a "block of insulating material, bearing loose poles of conducting material." It abundantly appears from the record that this claim means "poles free to move a little longitudinally in the block," as stated in the specification. The defendants' conducting poles are rigidly screwed to the block of insulating material, and therefore said block holds rigid and fixed poles, not loose poles, of conducting material. Let the bill be dismissed.